SIGNED.

Dated: December 13, 2012

**James M. Marlar, Chief Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SHANE SKINNER and JEANAMERRI N SKINNER,<br><br>Debtors. | Chapter 7<br><br>No. 4:12-bk-02466-JMM<br><br>Adversary No. 4:12-ap-00955-JMM |
| ANTHONY R. HUGGINS and CATHERINE J. HUGGINS,<br><br>Plaintiffs,<br>v.<br><br>SHANE SKINNER and JEANAMERRI N SKINNER,<br><br>Defendants. | **MEMORANDUM DECISION** |

A trial on the alleged non-dischargeabilty of a particular debt came on for hearing on December 4, 2012. The appearances were noted of record. After having had the matter under advisement, the court now rules.

## **JURISDICTION**

This court has jurisdiction over this case matter. 28 U.S.C. § 157(b)(2)(I).

Case 4:12-ap-00955-BMW    Doc 32    Filed 12/13/12    Entered 12/14/12 09:41:53    Desc
Main Document - Complaint    Page 1 of 7

# FACTS

1. On or about April 8, 2008, the Skinners entered into an agreement ("Agreement") with the Huggins whereby the Skinners agreed to sell to the Huggins a 1932 Ford automobile, VIN No. AZ268427 ("Vehicle").

2. As consideration for the Vehicle, the Huggins paid to the Skinners $12,000 in cash, and transferred to the Skinners two lots of real property located near Show Low, Arizona, to wit: Lots 34 and 35, Block 200 White Mountain Lakes Unit 8 ("Lots"). The transfer of the two Lots occurred on or about April 10, 2008.

3. Possession of the Vehicle was immediately transferred to the Huggins at the time of the parties' Agreement. However, the title was retained by the Skinners, as there was a lien on the vehicle.

4. The Skinners agreed to pay off the existing liens on the Vehicle, in the approximate amount of $33,000, held by Desert Energy Credit Union ("DECU"), in order for clear title to pass to the Huggins. This the Skinners agreed to do quickly. This was consistent with the Huggins' understanding of the agreement, and consistent with the intent of their agreement.

5. On or about May 12, 2008, the Skinners then sold the Lots to Sean Bowman ("Bowman") for $20,000. The Skinners and Bowman agreed that the Skinners would have the option to repurchase the Lots upon certain terms and conditions, along with paying monthly option fees ($125 per month per Lot).

6. The Skinners transferred the Lots to Bowman on or about May 23 and May 29, 2008.

7. The Skinners did not exercise the option to repurchase the Lots from Bowman.

8. When the Skinners received the $12,000 in cash from the Huggins on April 8, 2008, they did not use any portion thereof to pay off, or pay down, the DECU lien against the Vehicle.

9. Similarly, when the Skinners sold the two lots to Bowman, one month later, they used no part of the $20,000 to pay off the DECU lien, or to apply even $1 to that promise.

10. The Skinners used the $12,000, and the $20,000 toward other obligations which they had, or on living expenses.

11. The Skinners, at all relevant times, were living beyond their means, seeking cash from any source, and essentially "robbing Peter to pay Paul." (Court's quotation, not from witness' testimony.)

12. The Skinners were insolvent on April 8, 2008, in that they were unable to pay their debts as they became due, and they knew it. The Skinners' financial situation was desperate and dire.

13. Instead of paying off (or even paying down) the DECU lien on the Vehicle, the Skinners made matters worse for the Huggins by increasing the lien against the Vehicle from about $32,000 to $60,000. This occurred on or about June 17, 2008.

14. The Skinners then quickly defaulted on the secured loan owed to DECU, and DECU initiated a lawsuit against the Huggins and the Skinners.

15. DECU then repossessed the Vehicle from the Huggins.

16. Huggins had put $1,500 in improvements into the Vehicle.

17. On November 3, 2009, Huggins filed a Complaint in Pima County Superior Court (Case No. C20098583) ("State Court Case") against the Skinners for Breach of Contract and Breach of Duty of Good Faith and Fair Dealing ("State Court Complaint").

18. A default judgment was entered against the Skinners in the State Court Case on March 3, 2010, in the amount of $62,278.00, plus interest ("State Court Judgment").

## **THE LAW**

Section 523(a)(2)(A) provides that, "A discharge under section 727 . . . does not discharge an individual debtor from any debt--. . . (2) for money . . . to the extent obtained, by-- (A) false pretenses, a false representation, or actual fraud . . . ."

A claim of non-dischargeability under § 523(a)(2)(A) requires the creditor to demonstrate five elements:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); In re Sabban, 600 F.3d 1219, 1222 (9th Cir. 2010) (citing In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996) and In re Britton, 950 F.2d 602, 604 (9th Cir. 1991)).

The burden of proof is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654 (1991). "The burden of showing something by a 'preponderance of the evidence,' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" Concrete Pipe & Prods. of Cal., Inc., 508 U.S. at 622.

The credibility of a witness is a "quintessentially factual determination." United States v. Lummi Indian Tribe, 841 F.2d 317, 319 (9th Cir. 1988).

## DISCUSSION

The most difficult element inherent in any fraud theory is proving what the defendant actually intended at the time of the questioned transaction. This is because a party rarely admits an intention to defraud another. As a result of that reality, no case could ever be proven if a defendant's mere denial defeated this critical element. Thus, the law in the area of fraud has evolved to allow a trier of fact to infer, from all of the surrounding circumstances, whether a defendant intended not to perform on promises, when the representation to the contrary was made. See, e.g., In re Barrack, 217 B.R. 598, 607 (9th Cir. BAP 1998); In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985); In re Adeeb, 787 F.2d 1339, 1343 (9th Cir. 1986).

Debtor's knowledge and intent to deceive may be inferred by circumstantial evidence and from a debtor's conduct. Edelson v. Comm'r, 829 F.2d 828, 832 (9th Cir. 1987) ("A court may infer fraudulent intent from various kinds of circumstantial evidence."); Donaldson v. Hayes (In re Ortenzo Hayes), 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004) ("Knowledge may be proven by circumstantial evidence and inferred from the debtor's course of conduct.").

Here, the court finds that Defendant, Shane Skinner, made a representation that was so far beyond his financial reality as to be deceptive, and that, when made, he knew that he either could not or would not perform his promise to quickly pay off the underlying DECU lien on the vehicle. Huggins reasonably and justifiably relied on this representation. The court finds that Defendant Shane Skinner's (and Ms. Skinner's) financial circumstances were so out of control, at the time of the agreement, that Shane Skinner knew he would not use either the $12,000, or the $20,000 received one month later, to deliver, to Plaintiffs, a free and clear title, and pay off the DECU lien. This intent was borne out by all of the subsequent conduct of the Skinners, who used those monies for other purposes, and who never made even the slightest attempt to pay off the lien on the subject vehicle. This wrongful intent was also emphasized by the Skinners increasing, by double, the lien on the Vehicle which they had promised to pay off.

Each of the necessary elements was proven.

**DAMAGES**

Plaintiffs have been damaged in the sum of $33,500,[1] for which Shane Skinner, individually, and the marital community of Shane and Jenamerri Skinner, are jointly and severally liable.

As that damage figure is easily liquidated as of July 1, 2008, interest shall accrue thereon at Arizona's judgment interest rate in effect on that date (which was 10% per annum), and adjusted on the anniversary of each succeeding year, but not compounded, until paid. Such prejudgment interest is authorized. Cohen v. de la Cruz, 118 S.Ct. 1212 (1998) (where the

---

[1] $12,000 (cash), plus $20,000 (Lots), plus $1,500 (improvements) equals $33,500.

United States Supreme Court concluded that the text of § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees and other relief that may exceed the value obtained by the debtor)." "[T]he award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court. Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." Acequia Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800 (9th Cir. 1994) (determining that an award of prejudgment interest in a § 548(a) case is left to the sound discretion of the trial court and is awarded when necessary to make the wronged party whole).

Where a debt that is found to be non-dischargeable arose under state law, "the award of prejudgment interest on that debt is also governed by state law." Otto v. Niles (In re Niles), 106 F.3d 1456, 1463 (9th Cir. 1997). Under Arizona law, the court may award prejudgment interest in actions where the damages are easily liquidated as of a date certain. ARIZ. REV. STAT. § 44-1201(A); see, e.g., Costanzo v. Stewart Title and Trust of Phoenix, 23 Ariz.App. 313, 533 P.2d 73 (App. 1975); L.M. White Contr. Co. v. St. Jos. Structural Steel Co., 15 Ariz.App 260, 488 P.2d 196 (App. 1971).

In addition, the Huggins are entitled to their reasonable attorneys' fees and taxable costs. Cohen, 118 S.Ct.

Attorneys' fees may be awarded and declared non-dischargeable in an action to determine dischargeability of debt. Cohen, 523 U.S. at 223. However, before attorneys' fees are awarded, two requirements must be met: (1) an underlying contract or non-bankruptcy law must provide a right to recover attorneys' fees, and (2) the issues litigated in the dischargeability action must fall within the scope of the contractual or statutory attorneys' fees provision. See In re Dinan, 448 B.R. at 785 (9th Cir. BAP 2011) ("under Cohen, the determinative question for awarding attorneys' fees is whether the creditor would be able to recover the fee outside of bankruptcy under state or federal law").

This case originated as a contract action. Thus, ARIZ. REV. STAT. § 12-341.01 would be applicable to permit an award of fees, in the court's discretion. The court here exercises that discretion in favor of the Plaintiffs.

Plaintiff may seek an attorneys' fee award by filing an application therefor, within 20 days, to which the Skinners may respond within 20 days thereafter. Once the matter has been briefed, the court will rule on the pleadings.

## **CONCLUSION**

Counsel for Plaintiffs shall lodge a form of judgment, once the fee issue has been resolved, finding this debt to be non-dischargeable, and granting judgment for the monetary amount described above.

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to
all parties to this adversary proceeding